OPINION OF THE COURT
Eli Wager, J.
The plaintiffs in this action for injunctive and declaratory relief contend that the defendants have violated their statutory and constitutional rights. The plaintiffs, corrections officers assigned to the Nassau County Correctional Facility, and the defendants, the Sheriff of Nassau County, the Commissioner of Corrections and the Acting Deputy Commissioner, *561 the Warden and the Assistant Warden and the County Executive, have stipulated to the following facts.
At various specified times the defendant Sheriff or his employees compelled the plaintiffs to work overtime. When the plaintiffs work overtime, and even when they work regularly scheduled tours of duty, they are locked into the county jail and cannot depart the facility without the permission of higher authorities. At the times specified in the complaint the plaintiffs worked overtime under protest and were locked into the jail, although they received pay or compensatory time as provided in the collective bargaining agreement. Two specific instances are cited. Plaintiffs Donahue and Greaver were each forced to work one eight-hour overtime shift on February 8, 1978 during a snowstorm. The storm was such that the County Executive had issued a declaration of emergency. Plaintiffs Romei, Greaver and Donahue also worked an extra overtime shift on April 21, 1978 when 8 out of approximately 25 corrections officers scheduled for that shift failed to report to work.
The parties also stipulated that there are no standards or guidelines upon which the Sheriff bases his requirement that employees work overtime other than the Sheriff’s statutory obligation to receive and care for prisoners and the collective bargaining agreement to the degree that it is applicable.
Plaintiffs seek a judgment declaring that the acts of the defendants violate sections 160 and 161 of the New York State Labor Law and the plaintiffs’ constitutional rights under the Fourteenth Amendment, including their right to "freedom”, the right to travel and their right to equal protection of the law. They also seek an injunction restraining defendants from compelling them to work forced overtime and from locking them into the Nassau County Jail.
The defendants contend in their memorandum that a corrections officer voluntarily accepts the possibility of required overtime when he enters such employment and that there is no indication by the plaintiffs that any corrections officer was denied the right to resign during required overtime or at any time (although plaintiffs make such an assertion in their memorandum of law). Thus, defendants argue, there is no constitutional violation. The Sheriff’s statutory obligation to receive and care for prisoners is the stated justification for the required overtime.
It appears that the protection afforded by section 161 of the *562 Labor Law is not available to these plaintiffs. A corrections officer is a "peace officer” (CPL 1.20; Max Weinman, Inc. v Ten Great Jones, 23 Misc 2d 187; see People v Marrero, 94 Misc 2d 367), clearly not an employee within the statutory definition, i.e., a "mechanic, workingman or laborer working for another for hire” (Labor Law § 2, subd 5; see, e.g., Wood v City of New York, 274 NY 155, 158; People ex rel. Sweeney v Sturgis, 78 App Div 460, affd 175 NY 470). A "mechanic, workingman or laborer” as defined in the Labor Law has been held to refer to manual laboréis only (Matter of Metropolitan Life Ins. Co. v New York State Labor Relations Bd., 168 Misc 948, affd 255 App Div 840, affd 280 NY 194; see, also, Matter of Weiselberg v McNamara, 198 Misc 48, revd on other grounds 279 App Div 694).
Plaintiffs’ invocation of the Fourth and Fourteenth Amendments appears to be an attempt, inter alla, to claim for themselves the "liberty” guaranteed by the due process clause which has been defined as "a freedom from all substantial arbitrary impositions and purposeless restraints” (Poe v Ullman, 367 US 497, 543 [dissenting opn]). The claim must be judged in light of the fact that plaintiff peace officers are county employees and that the county has a unique interest in regulating the activities of suc)i employees that is simply not evident with respect to regulation of the general populace (see Loughran v Codd, 432 F Supp 259; see, also, McCarthy v Philadelphia Civ. Serv. Comm., 424 US 645). There is no constitutional provision which vests one with the right to government employment or which bars the imposition of "reasonable and necessary” limitations and conditions on such employment (Matter of Di Maggio v Brown, 19 NY2d 283). Thus, where members of a municipal police force claim that an internal regulation violates the liberty interest protected by the Fourteenth Amendment, the standard to be applied is whether there is a "rational Connection” between the challenged regulation and the promotion of the safety of persons and property (Kelley v Johnson, 425 US 238). The compelling State interest test which would be properly employed in the context of a civilian complaints is not relevant in this context (see Loughran v Codd, supra, at p 263).
Application of the Kelley standard to the instant case suggests that plaintiffs’ Fourteenth Amendments rights have not been violated. It is irrefutable that there is a rational connection between the Sheriff’s demand that corrections *563 officers serve an additional shift in an emergency and the necessity for securing the county jail.
To the extent that the plaintiffs’ allegation with respect to loss of "freedom” may be read as alleging some form of involuntary servitude, the claim is totally lacking in merit since plaintiffs clearly have the right not to be corrections officers (see Flood v Kuhn, 443 F2d 264, affd 407 US 258; Tucker v Harley Davidson Motor Co., 454 F Supp 738). One defense against oppressive hours, pay, working conditions or treatment is the right to change jobs (Pollock v Williams, 322 US 4). Plaintiffs clearly have not elected to pursue this defense.
The rationality test is also applicable to a challenge by municipal employees to a regulation which allegedly abridges the employee’s right to freedom of travel (Loughran v Codd, supra). The regulation upheld in Loughran would appear to be an even more severe limitation on the freedom to travel than the one at issue here and its relevance to the public interest more attenuated. Pursuant to the regulation, members of the New York City police force who were "on sick report” were confined to their homes and could not leave without permission. The court found that, because the regulation served to promote competent services and the government’s interest in maintaining fiscal integrity, it had a rational basis and did not violate substantive due process rights or the freedom to travel.
Plaintiffs’ final argument — that they have been denied equal protection of the law — is equally without merit. There would appear to be no invidious classification here since it is not asserted that all corrections officers are not treated alike. The mere fact that corrections officers are treated differently than other citizens is not a denial of equal protection (see, e.g., Baker v Cawley, 459 F Supp 1301; Matter of Figueroa v Bronstein, 38 NY2d 533). Nor is there a violation because corrections officers in other jurisdictions may not be subject to similar regulations; the equal protection clause does not require territorial uniformity (Matter of Rosenthal v Hartnett, 36 NY2d 269).
In the last analysis, it is doubtful whether it is within the competence of the judiciary to grant the injunctive relief requested in any event. The question of manpower and its deployment is essentially one of management prerogative solely within the discretion of the public employer (see International Assn. of Firefighters of City of Newburgh v Helsby, *564 59 AD2d 342). The management and operation of public enterprises including questions of judgment, discretion, allocation of resources and priorities are inappropriate for resolution in the judicial arena (see Jones v Beame, 45 NY2d 402). Jurisdiction has never been conferred on the courts to supervise the day-to-day acts within the jurisdiction of other departments of government (Abrams v New York City Tr. Auth., Misc 2d 938, affd 48 AD2d 69, affd 39 NY2d 990). The Sheriff is a public employer (see Civil Service Law, § 201, former subd 7, par [¶] [now subd 6, par (a), cl (vi)]), jointly with the county for the purposes of the Civil Service Law, but empowered determine terms and conditions of employment other than salary (Matter of County of Ulster v CSEA Unit of Ulster County Sheriff’s Dept., 37 AD2d 437). To the extent that it alleged that no standards have! been promulgated to guide Sheriff in his determination of what constitutes an emergency, it appears that plaintiffs must seek a remedy in a forum other than this one. It is noted that the applicable collective bargaining agreement contains provisions for overtime and provides a grievance procedure (see, also, General Municipal Law, § 683). |
In this forum defendants are entitled to a declaration that the defendants have not violated the plaintiffs’ statutory or constitutional rights.